## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

**ZENOLA MONCREASE,**

       **Plaintiff,**

    **v.**

**NEW JERSEY TRANSIT RAIL
OPERATIONS, INC.,**

      **Defendant.**

Civ. No. 12-6698 (KM)

**OPINION**

---

### KEVIN MCNULTY, U.S.D.J.:

Plaintiff, Zenola Moncrease, brings this suit against defendant New Jersey Transit Rail Operations, Inc. ("NJ Transit") relating to a workplace injury she suffered while employed by NJ Transit. Moncrease asserts claims under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and the Federal Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701 *et seq.* (Dkt. No. 1 ("Cplt."))[1]

Before the Court is plaintiff's motion for partial summary judgment. (Dkt. No. 26) Plaintiff requests a determination that NJ Transit violated LIA. She also asks the Court to bar defendant's use of a contributory negligence defense. (*See* Dkt. Nos. 26-2 p. 1; 26-4) For the reasons discussed below, I will grant plaintiff's motion for partial summary judgment.

## I. BACKGROUND

On December 10, 2010, Moncrease was working as a conductor on an NJ

---

[1]    Plaintiff also brings a claim under the Federal Safety Appliances Act ("FSAA"), 49 U.S.C. § 20301 *et seq.*, which is not at issue on this motion. (*See* Cplt. ¶ 2)

Transit train traveling in New Jersey. (Cplt. ¶10; Dkt. No. 26-2 p. 1)[2] As part of her duties, plaintiff operated a "trap door." (Dkt. No. 26 p. 2) The trap door is lowered or raised depending on the height of the platform at a particular station. At a station with a high platform, the trap door is lowered to serve as a walkway for passengers entering and leaving the train. At stations with low platforms, the trap door remains raised, leaving exposed a stairwell that passengers use to board and exit. (*Id.*)

At the time of Moncrease's injury, the train was stopped at a high-platform station, and Moncrease was lowering the trap door located on the first car of the train. (*Id.* p. 3) This was the first time that Moncrease had attempted to raise or lower this particular trap door during the trip. (*Id.* p. 3) To close the trap door, Moncrease had to release a "switch or latch," which is spring-activated. Moncrease alleges that when she attempted to use the switch/latch, it "snapped back" and caught half of her right middle finger between the release and another part of the trap door. (*Id.* pp. 3-4) She contends that the switch/latch was defective and that had it been working properly "the release should have returned to its normal position, but without a snapping force." (*Id.* p. 4)

Moncrease reported her injury to other members of the crew. She also directed the NJ Transit mechanical team to the car. The train did not leave the station until the mechanical team had repaired or replaced the switch. (*Id.*)

Moncrease asserts that the injury to her finger has caused issues for years. Symptoms include "throbbing, swelling … and major sensitivity." (Dkt. No. 26-5 pp. 42, 52-53) The injury caused ongoing discoloration of the fingertip and fingernail, and Moncrease has undergone surgery in an effort to relieve her symptoms. (*Id.* pp. 53, 55)

---

[2]     Plaintiff's Statement of Material Facts refers to the date of injury as September 10, 2013, which appears to be an error. (*See* Cplt. ¶ 2; Dkt. No. 28)

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the

3

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

## B.   FELA and LIA

FELA governs recovery for work-related employee injuries in the railroad industry. *Withrow v. CSX Transp., Inc.*, Civ. No. 07-418, 2008 WL 5101150, at *2 (S.D. Ohio Nov. 28, 2008). FELA's "prime purpose" is "protection of railroad employees." *Id.* (quoting *Urie v. Thompson*, 337 U.S. 163, 191, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)). It provides a cause of action when the employer's negligence "in whole or in part" causes the employee's injury. *Id.* (citing 45 U.S.C. § 51).[3]

LIA is an amendment to FELA. *Deso v. CSX Transp., Inc.*, 790 F.Supp.2d 1, 7 (N.D.N.Y. 2011). In relevant part, LIA provides:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances ... are in proper condition and safe to operate without unnecessary danger of personal injury.

49 U.S.C. § 20701. "The Supreme Court and Congress have emphasized that the statute is to be liberally construed in light of its prime purpose to protect employees and others by requiring the use of safe equipment." *Withrow*, 2009 WL 5101150, at *3 (citing *Lilly v. Grand T.W.R. Co.*, 317 U.S. 481, 485, 63 S.Ct.

---

[3] In relevant part, FELA provides:

> Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

347, 87 L.Ed. 411 (1943)).

LIA does not, however, create an independent cause of action for injured parties. *See Delaware & Hudson Ry. Co. v. Knoedler Mfrs., Inc.*, 781 F.3d 656, 664-65 (3d Cir.) *cert. denied*, 136 S. Ct. 54, 193 L. Ed. 2d 30 (2015); *Newton v. Norfolk S. Corp.*, Civ. No. 05-01465, 2008 WL 55997, at *7 (W.D. Pa. Jan. 3, 2008). Rather, a plaintiff must seek relief for a violation of LIA through FELA. *See Frass v. S. Pac. Transp. Co.*, 810 F. Supp. 189, 190-91 (S.D. Miss. 1993)("Because the Locomotive Boiler Inspection Act does not create an independent cause of action for personal injuries, claims raised under that act must be brought pursuant to FELA....").[4]

Generally, a FELA claim requires proof of common law negligence. *Deso*, 790 F.Supp.2d at 7. However, "[p]roof that the defendant violated LIA establishes FELA negligence *per se*." *Id.* at 8 (internal quotations and citations omitted). Therefore, a plaintiff bringing a FELA claim premised on an LIA violation "need not prove the traditional negligence elements of foreseeability, duty, and breach." *Id.* (citations omitted). She must, however, still establish causation in order to prevail under FELA. *Id.* Causation is established when a plaintiff proves that she "suffered injuries resulting in whole or in part from the statutory violation [of LIA]." *Withrow*, 2009 WL 5101150, at *3.

Here, plaintiff has requested summary judgment on the narrow issue of whether NJ Transit violated LIA. Plaintiff has not moved for summary judgment on the larger question of liability under FELA. Therefore, I set aside the issue of causation.

## C.    Violation of LIA

Because I find that there are no issues of material fact in dispute as to whether NJ Transit violated LIA, I will grant plaintiff's motion for summary judgment as to a LIA violation.

---

[4]     LIA was formerly known as the "Boiler Inspection Act." *See Deso*, 790 F.Supp.2d at 7 n.11.

"LIA applies to trains and locomotives that are 'in use' and 'on line.'" *Withrow*, 2009 WL 5101150, at *3 (citing 49 U.S.C. § 20701). It covers "any employee engaged in interstate commerce who is injured by reason of a violation of the Act." *Id.* (internal quotations and citation omitted).[5] Defendant does not dispute that these basic requirements of LIA are met. (*See* Dkt. No 28 ¶ 2 (admitting that Moncrease was working on a NJ Transit train traveling in New Jersey at the time of her injury)).

Nor does NJ Transit dispute that the release mechanism which plaintiff alleges caused her injury is a "part[]" or "appurtenance[]" of a "locomotive," subject to the coverage of LIA. *See* Dkt. No. 28 (making no challenge to the applicability of LIA); *see also Bolden v. Southeastern Pennsylvania Transportation Authority*, 872 A.2d 230, 232 (Pa. Comm. Ct. 2005), *aff'd*, 589 Pa. 402, 909 A.2d 797 (2006)(door closing mechanism located in locomotive car was a "part and appurtenance" under LIA); *Monheim v. Union R.R. Co.*, 788 F.Supp.2d 394, 402 (W.D. Pa. 2011)(LIA "extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances," and "[a] radio housed in the locomotive constitutes a part or appurtenance of the locomotive.")[6]

Similarly, NJ Transit does not dispute plaintiff's claim that the release mechanism was not "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701; *see also Monheim*,

---

[5]    The statute states that "[a]ny employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce ... be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." 45 U.S.C. § 51.

[6]    A "locomotive" is defined under the statute as "a piece of on-track rail equipment, other than hi-rail, specialized maintenance, or other similar equipment, which may consist of one or more units operated from a single control stand with one or more propelling motors designed for moving other passenger equipment; with one or more propelling motors designed to transport freight or passenger traffic, or both; or without propelling motors but with one or more control stands. 49 C.F.R. § 238.5. Plaintiff states that the train in this case was an "MU locomotive," which is defined under the act as "rail rolling equipment self-propelled by any power source and intended to provide transportation for members of the general public." *Id.*

788 F. Supp. 2d 394 at 400.

Indeed, defendants admit that the release was defective. For example, defendants admit that the following facts, among others, are not in dispute:

(1) [A]t the time of the accident, the release switch or latch ... did not operate normally because it was defective or broken. (Dkt. Nos. 26, 28 ¶¶ 17)

(2) The release switch or latch did not remain in the "out" position. Instead it ... "snapped back" and did not let go of Plaintiff's hand.... (*Id.* ¶¶ 18)

(3) The release or latch was not supposed to snap back as it did when Plaintiff used it and was injured. Had it been functioning properly, the release should have returned to its normal position, but without a snapping force. A properly functioning trap door switch or latch would never function as it did when Plaintiff was injured. (*Id.* ¶¶ 24)

Plaintiff also submits an array of evidence supporting the conclusion that the release mechanism was defective and unsafe. NJ Transit again admits that plaintiff has correctly characterized this evidence, and it submits no evidence of its own.

For example, plaintiff submits an Investigation Report setting forth the conclusions of the committee that investigated plaintiff's injury. That report states:

> A mechanical inspection revealed the release to be defective, which was adjusted at the Hoboken Terminal. Based on the circumstances of the incident the committee determined that the employees' actions did not contribute to the severity of the injury.

(Dkt. No. 26-10) Plaintiff also submitted testimony by Sean Kushnir, a supervisor at the Hoboken station who was a member of the investigative committee. Kushnir testified that the mechanical department informed him that "the equipment was defective" and that the accident was caused by "damaged equipment." (Dkt. Nos. 26, 28 ¶¶ 31; 26-9 p. 2)

Plaintiff also submitted paperwork completed by Joseph Kopin, who inspected and repaired the car. Mr. Kopin's paperwork indicated that defects were found, that it was "[v]ery hard to release trap door from latch," and that repairs were made. (Dkt. Nos. 26, 28 ¶¶ 35; 26-14) Moreover, she submitted testimony from Mr. Kopin, confirming that he had found that something was wrong with the trap door. (Dkt. Nos. 26, 28 ¶¶ 36; 26-15 p. 5)

Plaintiff submitted testimony from Daniel Tepper, a safety supervisor. He corroborated that inspection of the trap door release mechanism found it to be defective and that it was very hard to release from the latch. (Dkt. No. 26-13 pp. 2-3) She also submitted testimony from Andrew Mercoliano, a NJ Transit Trainmaster who testified that the release or latch "was defective" and "didn't work properly." (Dkt. Nos. 26, 28 ¶¶ 39; 26-17 p. 3)

In response, NJ Transit has submitted no evidence of its own to undermine the conclusion that the release was defective and unsafe, and thus in violation of LIA. Accordingly, I find that defendant has not raised a material issue of fact as to whether a violation of LIA occurred, and I will grant summary judgment in plaintiff's favor on this issue. *See Withrow*, 2009 WL 5101150, at *4-5 (finding no issue of material fact that defendant violated LIA where defendant "offered no affirmative evidence or testimony contradicting the evidence provided by the Plaintiff").[7]

### D. Contributory Negligence

Plaintiff also requests summary judgment on the issue of contributory negligence. She asks the Court to rule that she cannot be found contributorily negligent as a matter of law. (*See* Dkt. No. 26 p. 2) As discussed *supra*, LIA does not offer an independent source of relief—liability must be pursued under FELA. I therefore interpret plaintiff's request as one to bar a defense of

---

[7] The only issue that defendant appears to dispute is causation. NJ Transit does not argue that it did not violate LIA, only that "causation must still be proved" in order for plaintiff to establish FELA liability. (Dkt. No. 28 p. 1) However, FELA liability (and the causation element necessary to establish it) are not at issue on plaintiff's motion. (*See* Dkt. Nos. 26-1, 26-4)

contributory negligence on the ultimate issue of FELA liability. I will grant that request for partial summary judgment on that narrow issue. However, as discussed below, I caution plaintiff that this does not render evidence of her negligence, if any, irrelevant.

Plaintiff relies on 45 U.S.C. § 53, which contains the general rule that under FELA, contributory negligence of the employee may reduce damages but not bar recovery. However, as plaintiff notes, the statute also contains a caveat applicable to FELA cases, like this one, premised on negligence *per se*: "[N]o such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the *violation of such common carrier of any statute* enacted for the safety of employees *contributed to* the injury or death of such employee." 45 U.S.C. § 53 (emphasis added).

LIA is surely a statute "enacted for the safety of employees," *id.*, and I have already found that it was violated. This FELA action alleges negligence *per se* based on that statutory violation. In such a case, the applicability of a contributory negligence defense is tied up with the issues of causation and ultimate liability. Where causation is proven and liability is established, an award for the plaintiff cannot be reduced because of plaintiff's contributory negligence.

Causation, however, has not been decided on this summary judgment motion; indeed, plaintiff has specifically postured her motion so as to leave that question of causation for the jury. (*See* Dkt. No. 26-4) But if the finder of fact, considering the FELA claim, should find that plaintiff's injuries were caused at least in part by the defect on the release mechanism, then the defense of contributory negligence cannot be applied to reduce any damages award. *See Lilly*, 17 U.S. at 491, 63 S.Ct. at 353-54 ("Since petitioner's injuries were the result of respondent's violation of the Boiler Inspection Act, the partial defense of contributory negligence ... [is] not available...."); *Eckert v. Aliquippa & Southern Railroad Co.*, 828 F.2d 183, 186 (3d Cir. 1987)("[U]nder 45 U.S.C. § 53, if a violation of a safety statute is the cause of an employee's injury, an

award cannot be reduced for contributory negligence.").[8] And I so rule as a matter of law.

That does not mean, however, that any negligence on the part of plaintiff has no relevance. For example, should a jury find plaintiff was *solely* responsible for her own injury, that finding would be inconsistent with a finding that NJ Transit's negligence caused it. *See Walden v. Illinois Central Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992)("Proof that the employee's own negligence was the sole cause of his or her injury is a valid defense because it eliminates the possibility that the regulatory violation contributed in whole or in part to the injury.") That, however, is an issue of fact not presented by this motion.

Accordingly, I find that a defense of contributory negligence cannot be submitted to the jury in relation to plaintiff's FELA negligence *per se* claim premised on a LIA violation. I note, however, that defendant, on the issue of causation, may still assert that plaintiff herself was the sole cause of her injury.

## III. CONCLUSION

For the foregoing reasons, I will grant plaintiff's motion for partial summary judgment. An appropriate order is filed with this opinion.

Dated: March 30, 2016
Newark, New Jersey

**KEVIN MCNULTY**
**United States District Judge**

---

[8]   Plaintiff's own brief recognizes this, stating that "where a railroad employee's injuries are *caused by* the railroad's violation of a federal safety statute, such as the Federal Locomotive Inspection Act, the employee may not be found to have been contributorily negligent." (Dkt. No. 26 p. 2) (emphasis added). Again, plaintiff has not requested that this Court resolve the issue of causation, which will be left to the jury.